UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIZMODO MEDIA GROUP, LLC, | **ECF CASE** |
| Plaintiff, | 17 Civ. 5814 (ER) |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Counsel for Defendant*
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2689
lauren.lively@usdoj.gov

*Of Counsel*
LAUREN ALMQUIST LIVELY
Assistant United States Attorney

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND .............................................................................................. 2

ARGUMENT ................................................................................................. 4

   I.   Standard of Review................................................................................. 4

   II.   The Law of Adequate Search................................................................... 4

   III.   The Government Conducted Adequate Search in Response to Plaintiff's Request........... 6

       A.     Central Records System ("CRS")……………………………………………………6

       B.     Search for Records Responsive to Plaintiff's Request…………………………………7

       C.     The FBI's Searches Fully Complied with the Requirements of FOIA……………………8

   CONCLUSION..................................................................................... 13

# TABLE OF AUTHORITIES

*Adamowicz v. I.R.S.*,
  552 F. Supp. 2d 355 (S.D.N.Y. 2008) ...................................................................... 5

*Amnesty Int'l USA v. C.I.A.*,
  728 F. Supp. 2d 479 (S.D.N.Y. 2010) .................................................................... 10

*Campbell v. U.S. Dep't of Justice*,
  164 F.3d 20 (D.C. Cir. 1998) ................................................................................ 11

*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994) ............................................................................... 4,5,6

*Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*,
  181 F. Supp. 2d 356 (S.D.N.Y. 2002) ...................................................................... 8

*Grand Cent. P'ship, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) .................................................................................... 5

*Halpern v. F.B.I.*,
  181 F.3d 279 (2d Cir. 1999) .................................................................................. 12

*Hamdan v. U.S. Dep't of Justice*,
  797 F.3d 759 (9th Cir. 2015) ............................................................................. 9, 10

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2003) ................................................................................ 5

*Judicial Watch, Inc. v. Export-Import Bank*,
  108 F. Supp. 2d 19 (D.D.C. 2000) ........................................................................... 5

*Long v. Office of Pers. Mgmt.*,
  692 F.3d 185 (2d Cir. 2012) .................................................................................... 4

*Maynard v. C.I.A.*,
  986 F.2d 547 (1st Cir. 1993) ................................................................................... 5

*Mobley v. CIA*,
  924 F. Supp. 2d 24 (D.D.C. 2013) ......................................................................... 10

*Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement,*
   No. 16-387, 2017 WL 1494513 (S.D.N.Y. Feb. 1, 2018) ........................................................ 8

*New York Times Co. v. U.S. Dep't of Justice*,
   872 F. Supp. 2d 309 (S.D.N.Y. 2012) ...................................................................................... 4

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) .................................................................................................. 5

*Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement*,
   13 F. Supp. 3d 92 (D.D.C. 2014) ............................................................................................ 10

*SafeCard Servs., Inc. v. Sec. Exch. Comm'n*,
   926 F.2d 1197 (D.C. Cir. 1991) .............................................................................................. 12

*Wiesner v. F.B.I.*,
   668 F. Supp. 2d 164 (D.D.C. 2009) ........................................................................................ 11

**Statutes and Regulations**

5 U.S.C. § 552 ............................................................................................................................... 1

28 C.F.R. § 16.4 ............................................................................................................................ 3

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 4

Defendant the Federal Bureau of Investigation ("FBI" or "Government"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum in support of its motion for summary judgment in this Freedom of Information Act ("FOIA")[1] case.  Summary judgment should be granted in the FBI's favor because, as shown below and in accompanying declarations, it conducted a reasonable search for all documents responsive to the FOIA request of Plaintiff Gizmodo Media Group, LLC ("Plaintiff"), it released all responsive records that it determined were not subject to one or more FOIA exemptions, and Plaintiff does not even contest the withholdings from the responsive documents that FBI located.

## PRELIMINARY STATEMENT

Plaintiff made a FOIA request to the FBI, seeking records and communications on or referring to Roger Eugene Ailes.  *See* Complaint, Ex. 1, Dkt No. 1-1.  In response, the FBI conducted a thorough search of its systems of records and located 147 responsive pages, releasing 113 of those pages along with details concerning the grounds under which certain pages had been withheld in their entirety or partially redacted pursuant to the exemptions set forth in FOIA.  *See* Declaration of David M. Hardy ("Hardy Decl.") ¶¶ 4, 11, 20, 21, 22, 23, 24, 25.

Plaintiff has represented that it is not challenging the redactions or withholding of information, but is challenging the scope of the search the FBI conducted.  *See* Declaration of Lauren Almquist Lively ("Lively Decl.") ¶¶ 3-5.  Upon information and belief, Plaintiff claims that more records referring to Ailes should have been located in light of news reports of a Department of Justice investigation of Fox News that Plaintiff speculates necessarily involves

---

[1] 5 U.S.C. § 552 *et seq.*

the FBI.  As set forth herein, the FBI's search for records responsive to Plaintiff's request was wholly reasonable and adequate, and Plaintiff's unsupported belief that additional information should have been located fails to rebut the presumption of good faith afforded to the Government's declaration.  The FBI has met its obligations under FOIA, and therefore, the Court should grant summary judgment to the Government.

## BACKGROUND

On May 18, 2017, Plaintiff submitted a FOIA request to the FBI.  *See* Dkt No. 1-1 at 1. The request sought "all records and communications specifically referring to, or otherwise regarding the deceased:  Roger Eugene Ailes," and records describing the processing of the request including "records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request."  *Id*.  The request asked that the FBI "conduct a search of the Central Records System, including but not limited to the Electronic Surveillance (ELSUR) Indices, the Microphone Surveillance (MISUR) Indices, the Physical Surveillance (FISUR) Indices, and the Technical Surveillance (TESUR) Indices, for both main-file records and cross-reference records."  *Id*.  Plaintiff also requested a fee waiver and expedited processing on the grounds of public interest in the subject matter at issue. *See id*. at 3-4.

By letter dated June 1, 2017, the FBI confirmed receipt of the request.  *See* Hardy Decl. ¶ 7; Ex. B annexed thereto.  On August 1, 2017, Plaintiff filed the instant action. *See* Dkt No. 1. By letter dated August 2, 2017, the FBI denied Plaintiff's request for expedited processing on the ground that Plaintiff failed to provide enough information to permit expedition.  *See* Hardy Decl. ¶ 9; Ex. C annexed thereto.  As described in detail below, the FBI conducted a reasonable search

for records related to Ailes in existence at the time the search began.[2]  *See infra*, pp. 5-8; *see also* Hardy Decl. ¶¶ 20-25.  By letter dated January 12, 2018, the FBI informed Plaintiff that it had reviewed 147 pages, and it released 113 pages of responsive records to Plaintiff at no charge. *See* Hardy Decl. ¶ 11; Ex. E annexed thereto.  Of the 113 pages, some were produced in full and others partially redacted pursuant to FOIA exemptions (b)(3), (b)(6), (b)(7)(C) and (b)(7)(E), while the pages not produced were withheld pursuant to these same exemptions or were duplicates of other pages produced.  *See id.*  At the time of its production, the Government inadvertently did not disclose to Plaintiff that four records were identified that could not be reviewed, as three had been destroyed pursuant to the FBI's retention plan, which is monitored by the U.S. National Archives and Records Administration ("NARA") and accords with all applicable statutes and regulations.  *See id*. ¶ 26.  Accordingly, it is not known whether these documents were responsive to Plaintiff's request.  *See id.*  Further, the FBI identified another potentially responsive file that it had transferred to NARA on May 5, 2016 and which is now the property of that agency.  *See id*. ¶ 27.  As the file is no longer in the FBI's custody or control, it could not be reviewed for responsiveness.[3]  *See id.*

---

[2] In accordance with 28 C.F.R. § 16.4, the FBI employs a search "cut-off" date to define the scope of a FOIA request, using as the cut-off date the date the FBI commences a search.  *See* Hardy Decl. ¶ 12.  Because at the time the search began, information such as the search terms used and tracking sheets generated during processing did not exist, these records have not been produced, though much of the detail requested is provided herein and in the Hardy declaration. *See id.*

[3] As set forth in the Hardy declaration, the omission of this information in the FBI's response letter to Plaintiff was unintentional, and in any event, all applicable procedures, statutes, and regulations were followed in destroying or transferring the documents at issue.  *See* Hardy Decl. ¶¶ 11 fn. 2, 26, 27. The Government does not believe that these files will be at issue in the parties' motion practice; however, should Plaintiff challenge this aspect of the Government's production, the Government will respond in full in its opposition to Plaintiff's cross-motion for summary judgment.

Following the initial conference held on January 19, 2018, the parties engaged in discussions to narrow the issues in dispute, and Plaintiff represented that it would not challenge the redactions or withholdings in the Government's production.  *See* Lively Decl. ¶¶ 2-3.  The Government sent a letter to Plaintiff's counsel memorializing this agreement, and Plaintiff's counsel stated that he agreed with the Government's characterization of the remaining dispute as concerning solely the scope of the FBI's search.  *See id.* ¶¶ 4-5; Exhibit A annexed thereto.  In light of this agreement, the Government has not briefed herein the grounds for the FBI's redactions or withholding of information in its production to Plaintiff.

## ARGUMENT

### I.   Standard of Review

FOIA disputes, including, as here, the issue of the adequacy of an agency's search for documents, are generally resolved by summary judgment. *See, e.g., Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search . . . are sufficient to sustain the agency's burden." *Carney*, 19 F.3d at 812 (footnote omitted).[4]

### II.   The Law of Adequate Search

The government does not have a heavy burden in defending the searches it performed; each agency need only show "'that its search was adequate.'" *Long v. Office of Pers. Mgmt.*, 692

---

[4] The Government has not submitted a Local Rule 56.1 statement, as "[t]he general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment," and Local Civil Rule 56.1 statements are not required." *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).

4

F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812).  A search is judged by the efforts

the agency undertook, not by its results: the agency must demonstrate that its search was

"reasonably calculated to discover the requested documents," not that the search "actually

uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d

Cir. 1999).  The search "need not be perfect, but rather need only be reasonable," *id.*, 166 F.3d at

489, because "FOIA was not intended to reduce government agencies to full-time investigators

on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27

(D.D.C. 2000).  Provided it is properly designed, an agency's search may be reasonable even if it

does not return every responsive document.  *See Adamowicz v. I.R.S.*, 552 F. Supp. 2d 355, 361

(S.D.N.Y. 2008).

      To describe a reasonable search, a declaration should explain "the search terms and the

type of search performed, and aver[] that all files likely to contain responsive materials . . . were

searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (citation

and internal quotation marks omitted).  The declaration need not "set forth with meticulous

documentation the details of an epic search." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

Once the government submits a declaration describing a reasonable search, that declaration is

accorded a presumption of good faith, and the Court may award summary judgment on the

declaration alone.  *See Carney*, 19 F.3d at 812; *see also Grand Cent. P'ship*, 166 F.3d at 489.

Such a declaration may be made by the individuals supervising each agency's search, rather than

by each individual who participated. *See Carney*, 19 F.3d at 814.  Where an agency's declaration

demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the

agency's affidavit only by showing that the agency's search was not made in good faith."

*Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812. "[P]urely

speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813.

III.     **The Government Conducted an Adequate Search in Response to Plaintiff's Request**

As detailed at length in the Hardy declaration and described below, FBI conducted a search reasonably calculated to locate all records responsive to Plaintiff's request.  *See, e.g.*, Hardy Decl.  ¶¶ 13-25.  In light of the adequacy of the search and the absence of any clear indication that other records exist that would necessitate further searches, the Government's declaration is entitled to a presumption of good faith.

A.  **Central Records System ("CRS")**

The CRS is the FBI's main record system, which enables the FBI to maintain the information it acquires in the course of fulfilling its mandated law enforcement duties, which include but are not limited to conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries; and security screening.  *See* Hardy Decl. ¶¶ 13-14, 15, 16, 17 fn.3.  The FBI organizes files within the CRS through the Universal Index, an indexing system within the FBI's Automated Case Support ("ACS"), an electronic case management system that affords the FBI a centralized, electronic means of locating investigative information through an index search.  *See id.* ¶¶ 17-18.  The Universal Index accesses 118 million searchable records within the FBI's custody and control. *See id.* ¶ 18.

A search of CRS using the Universal Index for an individual or entity will locate files indexed under that person's name, including records in which the subject of the search is the designated subject of the file (known as the "main file") or records designated as "cross-reference," in which the subject of the search has been indexed within a main file about a different subject matter.  *See id.* ¶ 15.  Whether information is indexed is based on operational

necessity, namely whether it will be relevant and necessary for future retrieval.  *See id.* ¶ 16.

More specifically, the FBI will index a person within an investigatory file when he is a subject,

a victim, or a person of interest, or in other instances when FBI special agents or support

personnel assigned to an investigation decide that information is relevant or may have value in

the future.  *See id.* ¶ 22 fn. 7.

      **B.  Search for Records Responsive to Plaintiff's Request**

      In responding to Plaintiff's request, the FBI's Record/Information Dissemination

Section ("RIDS") first determined that the information sought by Plaintiff would be contained

only within the CRS, and then conducted an index search using the Universal Index application

of ACS.  *See id.* ¶¶ 20-22.  RIDS used the following search terms: "Ailes, Roger, Eugene,"

"Ailes, Roger, E," "Ailes, Roger," as well as a phonetic breakdown of his name through which

the computer automatically separates a name into phonetic components and searches the index

for three different versions of the name entered.  *See id.* ¶ 22 fn. 6.  Further, because of Ailes's

date of birth and the possibility of the FBI's having older records that are not indexed into the

Universal Index, the FBI conducted a manual review of index cards known as "manual indices"

for records held by the FBI Headquarters and field offices in Newark, New York, and

Washington.  *See id.* ¶ 22.  Through its searches, the FBI located 147 responsive pages of

records, comprising one main file indexed under Ailes's name and two cross-reference files, one

concerning a report filed by Ailes that the FBI evaluated to determine if an investigation was

warranted and the other concerning a 2002 interview with Ailes regarding the Tomorrow Show,

on which Ailes was an executive producer.  *See id.* ¶ 24.

      The FBI then repeated these searches to confirm its previous search results and to ensure

that no other potentially responsive main or cross-reference documents could be located through

the index system. *See id.* ¶ 23. The FBI also conducted an index search using Sentinel, the FBI's next-generation case management system that modernized but did not replace the ACS system. *See id.* ¶¶ 19, 23.  The subsequent searches did not locate any additional documents relating to Ailes. *See id.* ¶ 23.  The searches performed by the Government covered more specific indices, including all of those identified by Plaintiff in its FOIA request.  *See id.* ¶ 20 fn. 5 (citing Exhibit A, specifically, Plaintiff's request for a search of four indices in addition to the CRS).

### C.   The FBI's Searches Fully Complied with the Requirements of FOIA

Through the searches described above and in greater detail in Mr. Hardy's declaration, the FBI complied with its obligations under FOIA to conduct a reasonable search for all records responsive to Plaintiff's request.  As the Section Chief of RIDS, the component of the FBI that conducted the search, Mr. Hardy is an appropriate declarant on the subjects of the FBI's record-keeping systems and practices, RIDS's determination that the CRS was the only record system that would house records relating to Ailes, and the thorough manner in which RIDS searched the index system, using not only different variations of Ailes's name but also phonetic search terms. *See id.* ¶¶ 1, 13-25.

Courts previously have upheld as adequate searches of the CRS system and its integrated systems and indices when supporting declarations describe in detail similar to that provided here the relevant file systems, indices, and search procedures.  *See, e.g., Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement,* No. 16-387, 2017 WL 1494513, at *4-5 (S.D.N.Y. Feb. 1, 2018) (holding that FBI search was reasonable, based on declaration of David Hardy, which detailed, *inter alia*, FBI's search of CRS); *Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002) (holding that declaration by appropriate individual that described FBI's search of CRS system and FBI's

capacity to search its files on a particular subject was "facially sufficient for purposes of the adequate search requirement"); *see also Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 771–72 (9th Cir. 2015) (citing FBI affidavits stating that CRS and electronic surveillance (ELSUR) systems constitute the means by which FBI maintains records for use in investigation and holding that decision to search those databases "was a diligent search for documents in the places in which might be expected to be found") (internal quotation omitted).  Here, Mr. Hardy provided extensive detail on the FBI's record-keeping systems and certified both that the FBI searched all systems and locations likely to contain responsive records and that the FBI's search was reasonably calculated to locate all records responsive to Plaintiff's request.  *See* Hardy Decl. ¶ 20.  Because Mr. Hardy's declaration describes an adequate search, it is entitled to a presumption of good faith, and the Court should award summary judgment to the Government. *See Carney*, 19 F.3d at 812.

Because Plaintiff has not yet filed its motion for summary judgment, the FBI does not yet know the exact challenges Plaintiff intends to make to the Government's search.  However, it appears that Plaintiff will argue that, in light of news articles reporting a Department of Justice investigation of Fox News regarding payments made to resolve sexual harassment suits against Ailes, the FBI must have additional documents on Ailes, and that therefore its search was inadequate. Such a speculative contention lacks merit and is insufficient to bar a grant of summary judgment to the Government given the adequacy of the search conducted in response to Plaintiff's request.

As a preliminary matter, Plaintiff did not request records on Fox News; its request was limited to "all records and communications specifically referring to, or otherwise regarding, the deceased: Roger Eugene Ailes." Dkt No. 1-1 at 1.  Additional details offered in Plaintiff's

request letter about an investigation of Fox News to justify a fee waiver on the ground of public interest, *see id.*, do not change the parameters of the clearly defined request such that the FBI was required to investigate an entirely separate entity. *See, e.g., Mobley v. CIA*, 924 F. Supp. 2d 24, 42-43 (D.D.C. 2013), *aff'd*, 806 F.3d 568 (D.C. Cir. 2015) (records on requester's wife were not responsive to his FOIA request, which mentioned investigations of his family as a category of contemplated record, but focused on his abduction).

Further, the FBI had no reason to conclude that its search for records regarding or referring to Ailes was inadequate. As set forth in the Hardy declaration, the search (which was repeated to ensure thoroughness) did not merely encompass records where Ailes was the subject of an investigation but also extended to any instances in which he had been indexed as a victim or a person of interest in an FBI investigation into a different subject. *See* Hardy Decl. ¶ 22. While the FBI does not index in CRS every mention of a person in the FBI's millions of records, *see id.* ¶ 16, courts have held that searches based on the index system is adequate, in light of the fact that the CRS and its indexes are the FBI's main recordkeeping systems and a plaintiff "is entitled to a reasonable search for records, not a perfect one." *Hamdan*, 797 F.3d at 771–72 (rejecting argument that because decision to index names "other than subjects, suspects, and victims is discretionary," search of CRS was inadequate); *Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement,* 13 F. Supp. 3d 92, 103 (D.D.C. 2014) (finding FBI's search of CRS adequate because "all files reasonably likely to contain responsive materials were searched").

Once again, FOIA does not require that an agency "search every file where a document could possibly exist, but rather requires that the search be reasonable in light of the totality of circumstances." *Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 498 (S.D.N.Y. 2010) (internal

citations omitted).  Thus, "[a]n agency need only pursue leads that raise red flags pointing to the probable existence of responsive agency records that arise during its efforts to respond to a FOIA request."  *Id*. (quoting *Wiesner v. F.B.I.*, 668 F. Supp. 2d 164, 170-71 (D.D.C. 2009)).  Here, the FBI did not uncover any such red flags during its broad searches that would establish a need to look for additional records.  The main file on Ailes was produced to Plaintiff, and the two cross-reference files located in which Ailes was mentioned but not the subject of an investigation do not pertain to an investigation of Fox News.  *See* Hardy Decl. ¶¶ 22-24.

The Court should not be swayed by an argument by Plaintiff that news reports of an investigation of Fox News should have prompted the FBI to broaden its search for references to Ailes outside its indexing system.  In examining whether an agency should have pursued additional leads, courts have focused on information uncovered during the agency's search for records.  For example, in *Hamdan*, the Ninth Circuit Court of Appeals affirmed the district court's finding that the FBI's search of its records was reasonable, noting that plaintiffs "made no showing that by the close of the FBI's search, leads had emerged suggesting a need to search other databases."  797 F.3d at 772.  In so holding, the court contrasted the facts before it with those of *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999), in which the Court of Appeals for the District of Columbia Circuit held that the FBI's search was not adequate, given that the CRS search alluded to potentially responsive records in the electronic surveillance database, which the FBI failed to review.  *See Hamdan*, 797 F.3d at 772 ("Plaintiffs have made no showing that by the close of the FBI's search, leads had emerged suggesting a need to search other databases.").  The article that Plaintiff cited in requesting a fee waiver referred to a Department of Justice investigation and communications between the U.S. Attorney's Office and Fox News, with no mention of the FBI.  *See* Dkt No. 1-1, p. 1 fn. 5.

Plaintiff may claim that the FBI necessarily must be involved in any Department of Justice investigation; however, such a conclusion is entirely speculative and does not constitute the type of "clear and certain lead" that an agency is obligated to pursue in responding to a FOIA request. *Halpern v. F.B.I.*, 181 F.3d 279, 288 (2d Cir. 1999) (internal quotation omitted); s*ee also SafeCard Servs., Inc. v. Sec. Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them.").

Indeed, in *Labella v. F.B.I.*, the court rejected a very similar claim in holding that the FBI's search was adequate.  No. 11-CV-0023, 2012 WL 948567 (E.D.N.Y. Mar. 19, 2012). There, the plaintiff argued that gang stalking is pervasive and well-known to government agencies and that therefore, "the FBI *must* have documents responsive to his FOIA request." *Id.* at *9 (original emphasis).  The court noted that most of the documents cited by the plaintiff were not FBI records and did not contain any mention of the FBI, as is the case here, and that a press release in which individuals claimed the FBI will help the police on this issue did not establish that the FBI ever did so and thus had responsive records.  *Id*. at *9-10.  The court emphasized that presuming that the FBI has records "turns the law on its head; it is the FBI that is entitled to a presumption of good faith with respect to its affidavit, and [plaintiff] cannot rebut that presumption by speculating that the FBI simply must have the records he requests because of its stature and resources."  *Id*. at *9.

Here, Mr. Hardy's declaration described in detail the FBI's adequate search for records responsive to Plaintiff's request and makes clear that the documents located did not establish a need to conduct a further investigation.  The FBI's search was reasonably calculated to locate all records responsive to Plaintiff's request, and for this reason and because Plaintiff does not

challenge the FBI's withholdings from the responsive records that it located and released, the Government is entitled to summary judgment.

## CONCLUSION

For the reasons given above, the Government's motion for summary judgment should be granted.

Dated: March 19, 2018
       New York, New York

                         Respectfully submitted,

                         GEOFFREY S. BERMAN
                         United States Attorney

              By:     */s/ Lauren Almquist Lively*
                         LAUREN ALMQUIST LIVELY
                         Assistant United States Attorney
                         86 Chambers Street, Third Floor
                         New York, New York 10007
                         Telephone: (212) 637-2689
                         Facsimile: (212) 637-2686
                         E-mail: lauren.lively@usdoj.gov