IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

GIZMODO MEDIA GROUP, LLC,                )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )
                                         )        Case No. 17-cv-05814-ER
FEDERAL BUREAU OF                        )
INVESTIGATION,                           )
                                         )
        Defendant.                       )
                                         )

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"),

Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since

August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1,

2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In

that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures,

appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy

Judge Advocate at various commands and routinely worked with FOIA matters. I am also an

attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 246

employees who staff a total of twelve (12) Federal Bureau of Investigation Headquarters

("FBIHQ") units and two (2) field operational service center units whose collective mission is to

effectively plan, develop, direct, and manage responses to requests for access to FBI records and

information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN

1

FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to Plaintiff's request for information from its files under the provisions of FOIA, 5 U.S.C. § 552.  Specifically, I am familiar with the FBI's handling of Plaintiff's FOIA request dated May 18, 2017, seeking records on Roger Eugene Ailes.

(4)     In response to Plaintiff's request, the FBI processed a total of 147 pages.  Of these pages, 32 pages were released in full, 81 pages were released in part, and 34 pages were withheld in full, six of which were duplicates to other pages.  In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration supports the FBI's Motion for Summary Judgment, providing the Court and Plaintiff with a brief administrative history of Plaintiff's FOIA request; a description of the FBI's recordkeeping system; and the procedures used to search for, review, and process records responsive to the request.

(5)     Plaintiff's counsel has represented that Plaintiff does not seek to challenge the redactions or withholding of documents, as confirmed by letter dated March 7, 2018 from the U.S. Attorney's Office for the Southern District of New York. ***See* Declaration of Lauren Almquist Lively, Assistant United States Attorney for the Southern District of New York.**  Therefore, the FBI's full justification for withholding records has not been set forth herein.  Such information can be provided upon the Court's request, as all redactions or withholdings were proper under FOIA.

2

**ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUEST**

(6)     Plaintiff submitted a request on May 18, 2017 seeking "all records and communications specifically referring to, or otherwise regarding the deceased:  Roger Eugene Ailes." Plaintiff also requested records describing the processing of the request including "records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request." Lastly, Plaintiff requested preferred fee status as a news media requester as well as a fee waiver and expedited processing. *See* **Exhibit A**.

(7)     By letter dated June 1, 2017, the FBI confirmed receipt of Plaintiff's FOIA request for records on Roger Eugene Ailes and assigned it FOIA request number 1375045-000.  The FBI notified Plaintiff it would consider its request for a fee waiver and would provide a decision at a later date.  The FBI determined Plaintiff qualified as a general requester and therefore would be charged applicable search and duplication fees in accordance with 5 USC § 552 (a)(4)(A)(ii)(III) should its fee waiver be denied.  Lastly, the FBI notified Plaintiff of its right to appeal its response to the Department of Justice, Office of Information Policy within ninety (90) days from the date of the request.  Plaintiff was informed, in the alternative, it could seek dispute resolution services by contacting the Office of Government Information Services or the FBI's FOIA Public Liaison. *See* **Exhibit B**.

(8)     On August 1, 2017, Plaintiff filed the present lawsuit. *See* **Dkt No. 1.**

(9)     By letter dated August 2, 2017, the FBI denied Plaintiff's request for expedited processing, stating Plaintiff had not provided enough information to permit expedition.  The FBI notified Plaintiff of its right to appeal or to seek dispute resolution services. *See* **Exhibit C**.

(10)    By letter dated August 3, 2017, the FBI notified Plaintiff that records responsive to

3

its request would be made available in the FBI's FOIA Library (The Vault) on the FBI's public website to avoid charging Plaintiff duplication fees unnecessarily. The FBI again notified Plaintiff of its right to appeal or to seek dispute resolution services. *See* **Exhibit D**.

(11)    By letter dated January 12, 2018, the FBI released responsive records to Plaintiff. The FBI informed Plaintiff it had reviewed 147 pages and released 113 pages, with information withheld pursuant to FOIA Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E).   The FBI advised it was releasing the responsive material to Plaintiff at no charge.[1]  Lastly, the FBI notified Plaintiff of its right to appeal the FBI's determination by filing an administrative appeal with the Office of Information Policy within 90 days from the date of its letter.[2] *See* **Exhibit E.**

## REQUEST FOR UNDERLYING PROCESSING RECORDS

(12)    Plaintiff's FOIA request of May 18, 2017 also included a request of records describing the processing of the request including "records sufficient to identify search terms used and locations and custodians searched and any tracking sheets used to track the processing of this request." Records responsive to this request were not in existence during the processing of this request as they had not yet been created. The FBI employs a "search cut-off" standard to define the scope of a FOIA request and to determine the responsiveness of records, using as the cut-off date the date the agency commences a search for records responsive to a FOIA request. Generally, the FBI treats records created after the cut-off date as not responsive to the request, which is

---

[1] There is no need for a fee waiver determination because the FBI did not charge Plaintiff for records in this case.

[2] The FBI's search also located records that were destroyed or transferred to the U.S. National Archives and Records Administration (NARA), ¶¶ 26-27, *infra*. The FBI typically informs the requestor of destroyed and NARA records during release of responsive records but inadvertently failed to do so on January 12, 2018. This declaration serves to inform Plaintiff of the destroyed and NARA records. For the NARA record, please direct additional requests to NARA, 8601 Adelphi Road, College Park, MD 20740-6001 and reference file number 92-HQ-15760.

4

consistent with the DOJ regulations at 28 C.F.R. Section 16.4.   Also, the DOJ provides notice of its use of a search cut-off date in its published FOIA Reference Guide on its FOIA website.  The records sought by Plaintiff concerning search terms and tracking sheets were created during the handling of this FOIA request and thus did not exist before the search cut-off date.  Therefore, the FBI has not produced any documents in response to this portion of the request; however, much of the information requested is discussed below.

## THE FBI'S CENTRAL RECORDS SYSTEM

(13)   The Central Records System ("CRS") is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions.  The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices worldwide.

(14)   The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories.  The broad array of CRS file classification categories include types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters.   For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI Office of Origin initiating the file, and (c) the assigned individual case file number for that particular subject matter.  Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order which the document is added to the

file, typically in chronological order.

## CRS GENERAL INDICES AND INDEXING

(15)    The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS. The CRS is indexed in a manner which meets the FBI's investigative needs and priorities, and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties. The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval. The entries in the general indices fall into two category types:

> (a) <u>Main entry</u>. This entry pertains to records indexed to the main subject(s) of a file, known as "main file" records. The "main" entry carries the name of an individual, organization, or other subject matter that is the designated subject of the file.

> (b) <u>Reference entry</u>. This entry, or a "cross-reference," pertains to records that merely mention or reference an individual, organization, or other subject matter that is contained in a "main" file record about a different subject matter.

(16)    FBI Special Agents and/or designated support personnel may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.,* a terrorist attack or bank robbery). Indexing information in the CRS is based on operational necessity, and the FBI only indexes that information considered relevant and necessary for future retrieval. Accordingly, the FBI does not index every individual name or other subject matter in the general indices.

## AUTOMATED CASE SUPPORT

(17)    Automated Case Support ("ACS") is an electronic, integrated case management system that became effective for FBI Headquarters and all FBI Field Offices and FBI Legal Attaché Offices on October 1, 1995. As part of the ACS implementation process, over 105 million

6

CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. ACS has an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions.[3]

(18)   The Universal Index ("UNI") is the automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching. Individual names are recorded with applicable identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event. Moreover, ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompasses data that was already indexed into the prior automated systems superseded by ACS. As such, a UNI index search in ACS is capable of locating FBI records well before its 1995 FBI-wide implementation to the present day in both paper and electronic format.[4] Currently, UNI consists of approximately 118 million searchable records and is updated daily with newly indexed material.

## ACS AND SENTINEL

(19)   Sentinel is the FBI's next-generation case management system that became effective FBI-wide on July 1, 2012. Sentinel provides a web-based interface to FBI users, and it

---

[3] ACS and the next-generation Sentinel system are relied upon by the FBI daily to fulfill essential functions such as conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries; and security screening, to include Presidential protection.

[4] Older CRS records that were not indexed into UNI as result of the 1995 ACS consolidation remain searchable by manual review of index cards, known as the "manual indices." A search of the manual indices is triggered for requests on individuals if the person was born on or before January 1, 1958; and for requests seeking information about organizations or events on or before January 1, 1973. Records created after these dates would be captured through a UNI search.

includes the same automated application that is utilized in ACS. After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace ACS and its relevance as an important FBI search mechanism. Just as pertinent information was indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated in Sentinel, information is indexed for future retrieval. Moreover, there is an index data sharing nexus between the Sentinel and ACS systems whereby information indexed into Sentinel is replicated or "backfilled" into ACS. In sum, the Sentinel case management system builds on ACS and shares its operational purpose; Sentinel provides another portal to locate information within the vast CRS for FBI records generated on or after July 1, 2012.

## ADEQUACY OF SEARCH

(20)    The FBI conducted an adequate search reasonably calculated to locate all records responsive to Plaintiff's request. The FBI searched all systems and locations likely to contain responsive records; it concluded that there are no other systems or locations likely to contain those records. RIDS conducted an initial CRS index search for responsive records using the FBI's UNI application of ACS and Manual Indices, which identified main and cross reference files indexed under the subject's name and subject to the FOIA. RIDS confirmed these results with a subsequent CRS index search using FBI's UNI application of ACS, Manual Indices, and Sentinel; these subsequent CRS searches identified no additional responsive records.[5]

(21)    Scope of Search. The FBI concluded that CRS is the system of records where

---

[5] The FBI's searches of CRS cover Plaintiff's request, which specifically asked for the FBI to "conduct a search of the Central Records System, including but not limited to the Electronic Surveillance (ELSUR) Indices, the Microphone Surveillance (MISUR) Indices, the Physical Surveillance (FISUR) Indices, and the Technical Surveillance (TESUR) Indices, for both main-file records and cross-reference records." *See* **Exhibit A.**

information pertaining to Plaintiff's request would likely be maintained. The CRS is the principal records system searched by RIDS to locate information responsive to most FOIA requests, as the CRS is where the FBI stores and indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval. The Plaintiff's request related to "[a]ll records and communications specifically referring to, or otherwise regarding … Roger Eugene Ailes." Based on the nature of the information sought by Plaintiff, RIDS concluded that the CRS is the only system of records where that information would be maintained.

(22)   <u>Initial CRS Search</u>. RIDS conducted an initial CRS index search for responsive records using the FBI's UNI application of ACS and the Manual Indices. Index searches of the CRS are reasonably expected to locate responsive material within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval based on operational necessity. Given the broad range of indexed material in terms of both time frame and subject matter that it can locate in FBI files, the automated UNI application of ACS is the mechanism RIDS employs to conduct CRS index searches. If a request seeks records that may have been generated on or after July 1, 2012, an overlapping search of ACS via the UNI application and a Sentinel index search are performed at the litigation stage to ensure adequacy of the CRS index search. Here, RIDS employed the UNI application of ACS by using the following search terms: "Ailes, Roger, Eugene," "Ailes, Roger, E," "Ailes, Roger." The search included a three-way phonetic[6] breakdown of "Ailes, Roger, Eugene" and "Ailes, Roger, E." Additionally, RIDS conducted a

---

[6] <u>Three-way phonetic search ("TP" search)</u>—the FBI used the phonetic search capabilities of ACS to conduct a TP search of subject's name. This means that first, the computer automatically broke his name down and searched the index for three different breakdowns of the name entered. Then, the computer breaks names down based on their phonetic characteristics. The computer will return results based on whether or not they phonetically match a certain percentage of the first and last name searched.

search of the FBI's Manual Indices.  RIDS conducts a Manual Indices search of FBI Headquarters files when the request is for records concerning an individual born before January 1, 1958 or an organization requested prior to that date range.  This ensures that any records created prior to the implementation of ACS are also captured in the FBI's search efforts.  In this case, since Plaintiff requested records for Roger Eugene Ailes, born May 15, 1940, RIDS conducted a search of the Manual Indices for FBI Headquarters, Newark Field Office, New York Field Office, and the Washington Field Office.  Through its searches, the FBI identified main and cross reference files indexed under the subject's name and subject to the FOIA.  The FBI concluded that these identified records encompass all records in CRS in which Roger Eugene Ailes would be indexed in an investigatory file as a subject, victim, or person of interest, including investigations into him as the subject (main entry) and investigations into other persons, organizations, or events (cross reference entry).[7]

(23)    Subsequent CRS Searches.  After receiving notice of Plaintiff's lawsuit, the FBI conducted subsequent CRS searches.  RIDS employed the UNI application of ACS and the Manual Indices to confirm its previous search results and to identify additional potentially responsive main and cross-reference records.  These searches were conducted by using the same search terms as in its original search.  Furthermore, the FBI also conducted a Sentinel index search.  No additional records were located as a result of these subsequent CRS searches.

(24)    Records located.  As stated above, the FBI located 147 responsive pages and released 113 of those pages.  The main file records located were compiled in connection with the

---

[7] FBI Special Agents and/or designated support personnel assigned to an investigation may make a discretionary decision to index names other than subjects, suspects, and victims.  The FBI does not index every name in its files; rather, it indexes only information considered to be pertinent, relevant, or essential for future retrieval.

FBI's investigation of Roger Eugene Ailes, who was considered for a White House staff position, as part of a background check. The first cross-reference record located was compiled as the result of a report filed by Roger Eugene Ailes, which the FBI followed up on to determine if an investigation was warranted.[8]  The other cross-reference record that the search identified was compiled as the result of a 2002 FBI interview conducted with Roger Eugene Ailes in regards to the Tomorrow Show, a National Broadcasting Company ("NBC") show in which Ailes was the Executive Producer.  No other cross-reference records related to Ailes were located.

(25)   Review of Records. All responsive records were reviewed under the access provisions of the FOIA to achieve maximum disclosure, with every effort made to provide Plaintiff with all reasonably segregable, non-exempt information within the responsive records.  Copies of the pages released in part and in full have been consecutively numbered "FBI-1" through "FBI-147" at the bottom of each page.  Pages withheld in their entirety (*e.g.*, removed per exemption, or duplicates) were replaced by a "Deleted Page Information Sheet", which identifies the reason and/or the applicable FOIA exemptions relied upon to withhold the page in full, as well as the Bates numbers for the withheld material.  The Deleted Page Information Sheet and Bates-numbered pages that were withheld in part have been provided to Plaintiff and will be made available to the Court upon request. The exemptions asserted by the FBI as grounds for non-disclosure of portions of documents are FOIA Exemptions (b)(3), (b)(6), (b)(7)(C), and (b)(7)(E), with the coded category of exemption marked on the documents themselves.

---

[8] This cross-reference record comprised most of the pages withheld in full.  This record contained database search results obtained from a database that is not well known to the public, including the name of the database and associated printouts.  This information has been properly withheld using applicable FOIA exemptions identified by the FBI in its response to Plaintiff. The remaining records withheld in full consist of pages of duplicative documents.  Plaintiff was advised by letter dated January 12, 2018, the FBI did not process duplicate documents in order to reduce costs. *See* **Exhibit E**.

## DESTROYED AND NARA FILES

(26)    The FBI located files 161D-NY-R1310, 161-NK-1635, and 161-WF-5995 in its search and determined these files were destroyed. Since these files could not be reviewed, it is not known if they were responsive to Plaintiff's FOIA request. The retention and disposal of records are governed by statute and regulation under the supervision of the U.S. National Archives and Records Administration ("NARA"), Title 44, United States Code, Section 3301 and Title 36, Code of Federal Regulations, Chapter 12, Sub-chapter B, Part 1228. The FBI Records Retention Plan and Disposition Schedules have been approved by the United States District for the District of Columbia and are monitored by NARA.

(27)    The FBI also located file 92-HQ-15760 in its search and determined the file was transferred to NARA on May 5, 2016. As background, the FBI's Records Management Division, in conjunction with NARA, determines whether FBI records should be designated as temporary or permanent. FBI records which RMD designates as having permanent retention value are transferred periodically to NARA, accompanied by a signed "Agreement to Transfer" form. Once NARA receives the records they become the official property of NARA, and NARA is responsible for responding to all requests for information in those files. The main file record that is potentially responsive to Plaintiff's FOIA request was designated by RMD as a permanent record and transferred to NARA on May 5, 2016. The FBI no longer has custody, control or access to these records. Therefore, these files could not be reviewed for responsiveness to Plaintiff's FOIA request.

## CONCLUSION

(28)    The FBI conducted searches reasonably calculated to locate all records responsive

12

to Plaintiff's request and subject to the FOIA. The FBI closely reviewed the records identified by its searches, properly determined that certain material should be withheld under the FOIA exemptions, and released all non-exempt material responsive to Plaintiff's request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and Exhibits A through E attached hereto are true and correct copies.

Executed this _____ day of March, 2018.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia